**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JASON R. CALHOUN,**

      **Petitioner,**

      **v.**

**TERRY A. TIBBALS, WARDEN,
LONDON CORRECTIONAL INSTITUTION,**

      **Respondent.**

**Case No. 2:15-cv-03026
JUDGE MICHAEL H. WATSON
Magistrate Judge King**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition* (ECF No. 1), Respondent's *Return of Writ* (ECF No. 7), and *Supplement* to the *Return of Writ* (ECF No. 9), and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

#### Facts and Procedural History

In affirming Petitioner's conviction, the Ohio Twelfth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On January 3, 2013, appellant broke into the home of Jane Dill, who was 92 years old, sometime after she had fallen asleep around 10:00 p.m. that night. He stole credit cards from her purse and several large-scale electronics. Dill's kitchen window was later discovered broken. One of Dill's neighbors, Paul E. Newberry, who owns a nearby vacant home that been put up for sale, discovered that a dining room window in the home had been broken, one of the screens on the porch had been cut, and a few screens on the back of the house were out of place, but nothing was taken from the home. Carl Smith, whose mother, Irene Smith, is in a nursing home but still owns property in the same neighborhood, noticed a screen out of place on his mother's home and that a

window had been "knocked out in the house." Carl also found splatters of blood all around his mother's house and saw that someone had gone through a jewelry box that was in the house, opening its drawers and upending its contents, and had left other personal effects out of place.

At approximately 12:30 a.m. on January 4, 2013, a Murphy USA gas station clerk, Kaley Dunham, sold two cartons of cigarettes to a man who was later determined to be appellant. Appellant paid for the cigarettes with a credit card that belonged to Jane Dill.

Appellant initially signed his name "Jason Calhoun" on the credit card transaction slip. However, he requested the credit card slip back, scratched out his signature, "Jason Calhoun," and then scribbled something illegible under his scratched-out signature. Dunham saw appellant leave with two women in a taxi.

Shortly thereafter, appellant and the two women entered a WalMart that was near the Murphy USA gas station. A WalMart night-time cashier, Alexandria Harter, saw appellant and the two women use a credit card to make a "test purchase" of three Pepsis to "clear the card to see if it would work." Harter observed appellant and the two women as they looked through the store. At one point, they came up to Harter and asked for help in the jewelry department, and Harter sent one of her fellow employees to help them. Appellant and the two women went to the electronics department, and then walked up to the checkout register, with a Galaxy tablet, several different pieces of jewelry and three cell phones. Harter rang up the items that appellant and the two women sought to purchase, which totaled approximately $1,600. Appellant handed Harter a credit card to pay the $1,600 bill. Harter took the credit cart and charged the $1,600 bill to it, using the store's computerized checkout register, and $1,600 was debited to the credit card. At the same time, however, the computerized checkout register prompted Harter to check the customer's I.D. When Harter asked appellant to see the credit card and his I.D., she noticed that the name on the credit card was "Jane Dill" while the name on appellant's I.D. was "Jason Calhoun." Harter then summoned the store's manager, Alana Bryant.

When Bryant came to the checkout register, appellant explained to her that the credit card belonged to his mother and that he had permission to use it to buy Christmas presents for himself and his friends who were with him. Bryant told appellant that he could not use the credit card because the name on the I.D. he provided did not match the name on the credit card. Bryant made appellant take

the items to the store's service desk. She escorted him and the two women with him to the store's customer service area to ring back the items. When they got there, Bryant refunded all the money to the credit card that had been debited to it as a result of appellant's use of it. After refunding the money to the credit card, Bryant stepped into the store's cash office and called the police. Appellant and the two women left the store, with appellant taking the credit card with him. Harter heard appellant and the two women say as they left, "hurry, run, hurry[.]" After the three had "dart[ed] off," one of them came back inside and told Harter that they were trying to get a taxi. Eventually, a taxi came and the three got into it and left the store.

Officer Jeff Heinz was dispatched to the WalMart in response to Bryant's call. When he arrived there five minutes later, he noticed a taxi that was just pulling out. Officer Heinz flagged down the taxi driver to get him to stop, which he did. The taxi driver told Officer Heinz that he had just picked up the three individuals seated in his taxi from WalMart. Officer Heinz spoke to all three of the passengers, including appellant. Appellant first told Officer Heinz that his name was "Kyler Willis," but appellant was unable to provide his social security number. One of the two females with appellant in the taxi eventually told Officer Heinz who appellant actually was, and appellant himself eventually admitted who he was. Officer Heinz found two Fifth Third credit cards, one blue and the other gold, lying on the passenger-side floorboard of the taxi. Both credit cards bore Jane Dill's name. Officer Heinz found two cartons of cigarettes in the backseat in the passenger area and another carton of cigarettes and a pack of Newports that were in the front of the vehicle. Officer Heinz noticed that appellant had an injury to his hand that was bleeding through its bandages.

Appellant was indicted in Case No. 13CRI00039 on ten counts involving the events that occurred at the Murphy USA gas station and WalMart on or about January 4, 2013. The charges included four counts of forgery in violation of R.C. 2913.31(A)(1) and 2913.31(A)(3), with all four counts being fifth-degree felonies (Counts One, Two, Three and Four); two counts of receiving stolen property in violation of R.C. 2913.02(A)(3), both fifth-degree felonies (Counts Six and Seven); two counts of misuse of credit card in violation of R.C. 2913.21(B)(2), with a specification that the victim was an elderly person in violation of R.C. 2913.21(D)(4), both fourth-degree felonies (Counts Eight and Nine); and one count of theft in violation of R.C. 2913.02(A)(3), a first-degree misdemeanor (Count Ten).

3

Appellant was indicted in Case No. 13CRI00040 on five counts involving the break-ins that occurred at the houses of Dill, Newberry and Irene Smith on or about January 3, 2013. The charges included burglary in violation of R.C. 2911.12(A)(1), a second-degree felony (Count One); theft in violation of R.C. 2913.02(A)(1), a fifth-degree felony (Count Two); two counts of breaking and entering in violation of R.C. 2911.13(A), both fifth-degree felonies (Counts Three and Four); and possession of criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony (Count Five), with a specification that the device or instrument was intended for use in the commission of a felony.

Appellant was tried by jury simultaneously on Case Nos. 13CRI00039 and 13CRI00040. The state presented the testimony of several law enforcement officers involved in the case and the employees of Murphy USA gas station and WalMart who testified to the facts related above. The state presented photos of shoe prints at the crime scene and appellant's shoes, which were collected at the time of his arrest. The state also presented testimony from a forensic expert who testified that appellant's shoes had tread impressions consistent with those found at one of the homes that had been burglarized and a DNA expert who testified that appellant's blood DNA was consistent with blood found on a rock and a jewelry box at one of those same homes.

At the close of evidence, the state dismissed Counts Five (attempted theft) and Ten (theft) in Case No. 13CRI00039, and in that same case, the trial court joined Counts Six and Seven (each count for receiving stolen property) into a single count, Count Six. The jury convicted appellant in Case No. 13CRI00039 of four counts of forgery (Counts One, Two, Three and Four); receiving stolen property (Count Six); both counts of misuse of credit cards (Counts Eight and Nine) and the elderly-victim specifications attached to those two counts. The jury acquitted appellant in Case No. 13CRI00040 of one count of breaking and entering (Count Three) and possession of criminal tools (Count Five), but convicted him of burglary (Count One), theft (Count Two) and the remaining count of breaking and entering (Count Four).

At appellant's sentencing hearing, the trial court determined, as to Case No. 13CRI00039, that appellant's convictions on Counts One (forgery), Two (forgery) and Eight (misuse of credit cards) were allied offenses of similar import and that appellant's convictions on Counts Three (forgery), Four (forgery) and Nine (misuse of credit cards) were allied offenses of similar import. The state elected to proceed on Count Eight (misuse of credit cards at WalMart) and

Count Nine (misuse of credit cards at Murphy USA gas station). The trial court sentenced appellant to 12 months in prison on each count of misuse of credit cards and ordered him to serve those two 12–month prison terms concurrently. The trial court merged appellant's conviction on Count Six (receiving stolen property) with his conviction on Count Two (theft) in Case No. 13CRI00040, after finding that those offenses were allied offenses of similar import, and the state elected to proceed on appellant's theft conviction in Count Two.

In Case No. 13CRI00040, the trial court sentenced appellant to eight years in prison for his conviction on Count One (burglary), 12 months in prison for his conviction on Count Two (theft) and 12 months in prison for his conviction on Count Four (breaking and entering), and ordered him to serve each of those sentences consecutively, giving him a ten-year prison sentence for his convictions in that case. The trial court then ordered appellant to serve his ten-year prison sentence in Case No. 13CRI00040 concurrently with his 12–month prison sentence in Case No. 13CRI00039, giving him an aggregate ten-year prison sentence for his convictions in both cases.

Appellant now appeals, assigning the following as error:

Assignment of Error No. 1:

THE COURT ABUSED ITS DISCRETION BY NOT PERMITTING A CONTINUANCE FOR THE DEFENDANT TO BRING FORTH WITNESSES TO TESTIFY IN HIS BEHALF.

Assignment of Error No. 2:

THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO CONVICT THE DEFENDANT COUNT EIGHT, MISUSE OF A CREDIT CARD. [sic].

Assignment of Error No. 3:

THE COURT ERRED BY OVERRULING THE DEFENDANT'S MOTION FOR RULE 29 DIRECTED VERDICT OF ACQUITTAL AS TO COUNTS THREE, FOUR AND NINE.

Assignment of Error No. 4:

THE COURT COMMITTED REVERSIBLE ERROR BY
SENTENCING THE DEFENDANT TO MAXIMUM,
CONSECUTIVE SENTENCES IN CASE NO. 13CR100040.

*State v. Calhoun,* No. CA2013-05-014, 2014 WL 4180307, at *1-4 (Ohio App. 12th Dist. Aug.

25, 2014).  On February 18, 2015, the Ohio Supreme Court declined to accept jurisdiction of the

appeal.  *State v. Calhoun*, 141 Ohio St.3d 1476 (2015).  On November 7, 2014, Petitioner filed

an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  *Appellant's Motion*

*to Reopen* (ECF No. 7-1 PageID# 206).  He claimed that he had been denied the effective

assistance of appellate counsel based on his attorney's failure to raise an issue regarding the

admission of alleged hearsay statements by Officer Jeff Heinz, and his attorney's failure to raise

a claim under the Confrontation Clause.  *Id*. (PageID# 220).  On January 8, 2015, the appellate

court denied the Rule 26(B) application.  *Id.* (PageID# 219).  On April 29, 2015, the Ohio

Supreme Court declined to accept jurisdiction of the appeal.  *State v. Calhoun*, 142 Ohio St.3d

1453 (2015).

In this action, filed on November 23, 2015, Petitioner claims that the evidence was

constitutionally insufficient to sustain his conviction on one charge of misuse of a credit card

(claim one); that he was denied due process and the right to present a defense when the trial court

denied his request for a continuance to secure the attendance of defense witnesses (claim two);

that the evidence was constitutionally insufficient to sustain his convictions on two counts of

forgery and one count of misuse of a credit card (claim three); and that he was denied the

effective assistance of appellate counsel because his attorney failed to raise an issue under the

Confrontation Clause (claim four).  Respondent contends that Petitioner's claims offer no basis

for relief.

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which governs this Court's review of state-court convictions, is "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court"; federal courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

Moreover, the factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. §§ 2254(d)(1), (d)(2). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying these standards rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the "unreasonable application" test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013)

(considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182.

**Claims One and Three**

In claims one and three, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions on two counts of forgery and two counts of misuse of a credit card. The state appellate court rejected these claims as follows:

> [A]ppellant argues the state failed to present sufficient evidence to convict him of Count Eight in Case No. 13CRI00039, which charged him with misuse of credit cards at WalMart. The charge arose from appellant's use of a stolen credit card at WalMart to purchase electronics and jewelry worth $1,600. Appellant contends that since the computerized checkout register at WalMart would not complete the transaction in the absence of a valid I.D. check and the transaction was voided and the charges were refunded to the cardholder, no property was "obtained" by him before leaving the store, and therefore, the state failed to prove the elements of the offense of misuse of credit card.
>
> Initially, appellant failed to file a timely Crim.R. 29 motion for acquittal on Count Eight. The Ohio Supreme Court has held that if a criminal defendant fails to file a timely Crim.R. 29 motion for acquittal, the defendant waives, for purposes of appeal, all but plain error regarding the sufficiency of the evidence. *State v. Roe*, 41 Ohio St.3d 18, 25 (1989), and *Dayton v. Rogers*, 60 Ohio St.2d 162, 163 (1979). However, the court has stated in two more recent cases that a failure to file a timely Crim.R. 29(A) motion during a jury trial does not waive an argument regarding the sufficiency of the evidence since the defendant's "not guilty" plea preserves his right to challenge the sufficiency of the evidence on appeal. *State v. Jones*, 91 Ohio St.3d 335, 346 (2001); *State v. Carter*, 64 Ohio St.3d 218, 223 (1992).

9

"An alleged error is plain error only if it is 'obvious,' and 'but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Blake*, 12th Dist. Butler No. CA2011–07–130, 2012–Ohio–3124, ¶ 25, quoting *State v. Jackson*, 12th Dist. Fayette No. CA2011–01–001, 2011–Ohio–5593, ¶ 13, citing *State v. Perez*, 124 Ohio St.3d 122, 2009–Ohio–6179, ¶ 181. It has been held that "because 'a conviction based on legally insufficient evidence constitutes a denial of due process,' *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, a conviction based upon insufficient evidence would almost always amount to plain error." *State v. Coe,* 153 Ohio App.3d 44, 49, 2003–Ohio–2732 (4th Dist. 2003).

R.C. 2913.21 defines the offense of misuse of credit cards, in pertinent part, as follows:

(B) No person, with purpose to defraud, shall do any of the following:

* * *

(2) Obtain property or services by the use of a credit card, in one or more transactions, knowing or having reasonable cause to believe that the card has expired or been revoked, or was obtained, is retained, or is being used in violation of law[.]

R.C. Chapter 2913 does not define the word "obtain." Therefore, the word must "be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. "Obtain" is commonly defined as meaning "to gain or attain possession or disposal of [usually] by some planned action or method[.]" Webster's Third New International Dictionary (1993) 1559.

Here, the credit card appellant used at WalMart went through the store's computerized checkout register. The charges for the merchandise that appellant brought to the register to purchase were debited to the credit card. Once the store's employees discovered that the name on appellant's I.D. did not match the name on the credit card, they voided appellant's $1,600 purchase and refunded to the credit card the $1,600 that had been debited to it. Under these facts, we conclude that at the very moment the funds were debited to the stolen credit card, appellant, "with purpose to defraud" "obtained[ed] property" "by the use of a credit card," "knowing or having reasonable cause to believe that the card * * * was obtained, is retained, or is being used in violation of law [.]" Our conclusion is not changed by the fact that the store's

computerized checkout register prompted the store's employees to check the customer's I.D., which in turn led them to prohibit appellant from leaving the store with the merchandise, because by the time the store's employees checked appellant's I.D., he already had completed the offense of misuse of credit cards as defined in R.C. 2913.21(B)(2).

Therefore, appellant's second assignment of error is overruled.

In his third assignment of error, appellant argues the state failed to present sufficient evidence to prove that he was the perpetrator of the offenses committed at Murphy USA gas station that formed the basis of Count Three (forgery without consent), Count Four (forgery by uttering) and Count Nine (misuse of credit card) in Case No. 13CRI00039. Appellant points out that the state failed to have the cashier at Murphy USA gas station identify him as the person who entered the store, purchased the cigarettes, used the credit card or signed the transaction slip and that the cashier had lots of customers and thus probably could not remember this particular transaction. We find this argument unpersuasive.

The identification of a perpetrator can be established by circumstantial evidence. *State v. Saunders*, 12th Dist. Fayette No. CA2012– Ohio–006, 2013–Ohio–2052, ¶ 44. Here, even though the state did not have the cashier at Murphy USA gas station identify appellant at trial as the person who used Jane Dill's credit card to purchase the two cartons of cigarettes, there was ample circumstantial evidence that appellant was in fact the person who did so. State's Exhibit 12 shows a receipt from Murphy USA gas station that has appellant's name "Jason Calhoun" scratched out, and underneath it, has an illegible scribble. The cashier noted that the individual who signed the name "Jason Calhoun" was seen leaving the store in a taxi cab. Appellant was in the vicinity of the Murphy USA gas station shortly after the cigarette purchase, the cashier and the manager at WalMart saw appellant enter a taxi cab, and shortly thereafter, appellant was apprehended in a taxi cab nearby. There were two cartons of cigarettes found in the taxi cab that matched the ones sold that night at Murphy USA gas station to the man who signed his name "Jason Calhoun," then scratched out that signature and replaced it with a scribble.

In light of the foregoing, appellant's third assignment of error is overruled.

*State v. Calhoun*, 2014 WL 4180307, at *5-6.  Petitioner does not dispute the factual findings of the state appellate court.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St.3d 259 (1991).  Of course, it is state law that determines the elements of a criminal offense.  Once the state has adopted the elements of the offense, the state must then prove each of those elements beyond a reasonable doubt.  *In re Winship,* 397 U.S. at 364.

The AEDPA requires that a federal habeas court apply a doubly deferential standard of review:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11

12

> F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have
> not voted to convict a defendant had we participated in jury
> deliberations, we must uphold the jury verdict if any rational trier
> of fact could have found the defendant guilty after resolving all
> disputes in favor of the prosecution. Second, even were we to
> conclude that a rational trier of fact could not have found a
> petitioner guilty beyond a reasonable doubt, on habeas review, we
> must still defer to the state appellate court's sufficiency
> determination as long as it is not unreasonable. *See* 28 U.S.C. §
> 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  *See also Tucker v. Palmer*, 541 F.3d 652

(6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility
> of the jury – not the court – to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> *Cavazos v. Smith*, 565 U.S. 1, —, 132 S.Ct. 2, 4, 181 L.Ed.2d 311
> (2011)(*per curiam*). And second, on habeas review, "a federal
> court may not overturn a state court decision rejecting a sufficiency
> of the evidence challenge simply because the federal court
> disagrees with the state court. The federal court instead may do so
> only if the state court decision was 'objectively unreasonable.'"
> *Ibid.* (quoting *Renico v. Lett*, 559 U.S. —, —, 130 S.Ct. 1855, 176
> L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, —, 132 S.Ct. 2060, 2062 (2012) (*per curiam*).  This hurdle is

difficult to surmount and, for the reasons discussed by the state appellate court, this Court is not

persuaded that Petitioner has done so here.  As discussed by the state appellate court, evidence

established that Petitioner had successfully purchased $1,600 of items from Walmart using a

stolen credit card, although he had to return to the service desk for a return of the items and a

voiding of the transaction when the check-out attendant realized that Petitioner's name did not

match that on the credit card used.  Further, Petitioner's name had been written, and then

scratched over, on the receipt from the Murphy USA gas station, and Petitioner was located by

police in the same area shortly thereafter in a taxi cab containing the stolen credit cards and two cartons of cigarettes. "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Swain v. Lazaroff*, 2016 WL 6605140, at *15 (N.D. Ohio May 23, 2016)(citing *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007)). In view of the foregoing, this Court agrees that the prosecution was not required to present identification evidence through the Murphy USA clerk or through footage from a surveillance camera in order to establish Petitioner's guilt of the crimes charged. Viewing all of the evidence in the light most favorable to the prosecution, the evidence was constitutionally sufficient to sustain Petitioner's convictions on these charges.

Claims one and three are without merit.

## Claim Two

In claim two, Petitioner alleges that he was denied due process and the right to present a complete defense when, on the first day of trial, the trial court denied his request for a continuance in order to secure the attendance of defense witnesses without inquiring into the reasonableness of the request. The state appellate court rejected this claim as follows:

> [A]ppellant argues the trial court erred by denying his request on the morning of trial for a continuance to subpoena witnesses on his behalf, because the trial court did not inquire as to the length of delay being sought by him to procure his witnesses, he previously had not sought a continuance, the state would not have been unduly inconvenienced by the continuance even though the state's witnesses may have been inconvenienced, and he had limited access to his attorney due to his incarceration. This argument lacks merit.
>
> A trial court has broad discretion in deciding whether or not to grant a continuance, and its decision will not be overturned unless it amounts to an abuse of discretion, *i.e.*, it is unconscionable, arbitrary or unreasonable. *State v. Grant*, 67 Ohio St.3d 465, 479

(1993). The trial court may consider all relevant factors, including the reasons for, and the length, of the continuance requested; whether any prior continuance was granted in the case; inconvenience to the parties; and whether the defendant contributed to the reasons for the requested continuance. *Id*.

Here, the trial court did not abuse its discretion by denying appellant's motion for a continuance since it was made on the morning of trial and the two cases on which appellant was being tried had been pending for approximately two months, one of appellant's victims was 92 years old, appellant's attorney previously represented to the trial court that there was no further reciprocal discovery needed, and appellant failed to proffer the names of the witnesses whose testimony he sought to present and explain how they would assist his defense.

Therefore, appellant's first assignment of error is overruled.

*State v. Calhoun*, 2014 WL 4180307, at *4.

Respondent contends that Petitioner raised this claim in the state appellate court only in the context of an alleged violation of state law, and that he has therefore waived any federal issue for federal habeas corpus review. *Return of Writ* (ECF No. 7, PageID# 39-40). This Court disagrees.

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not one of jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), the requirement is rooted in important principles of federalism and is designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any of four ways: (1) reliance upon federal cases employing

15

constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement.  *Id.*

The record in this case indicates that, on direct appeal, Petitioner expressly argued that "by denying the [Petitioner] the opportunity to subpoena [ ] witnesses, the Court denied him his Constitutional right to Due Process and his right to present an effective defense." *Brief of Appellant* (ECF No. 7-1 PageID# 101). Moreover, Petitioner referred to *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), in support of this claim, quoting language from the Supreme Court regarding the test for deciding when a denial of a continuance "is so arbitrary as to violate due process." *Id.* (ECF No. 7-1 PageID# 100-101).  This Court therefore concludes that Petitioner fairly presented this federal claim to the state courts and thereby preserved the claim for review in these proceedings.

Of course, to the extent that Petitioner claims that the trial court abused its discretion in violation of state law when it refused to grant his request for a continuance, the issue does not provide a basis for federal habeas corpus relief.  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition.  *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985).  Moreover, the efforts of state court trial judges to control the proceedings before them do not ordinarily give rise to constitutional concerns.

> Trial judges necessarily require a great deal of latitude in
> scheduling trials. Not the least of their problems is that of

16

> assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates [a defendant's constitutional trial right]. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

*Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). "A 'denial of a continuance rises to the level of a constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of [a] justifiable request for delay.'" *Ambartsoumov v. Warden*, No. 2:12-cv-345, 2014 WL 3045394, at *27 (S.D. Ohio July 3, 2014)(quoting *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004)).

> The circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process. *Ungar*, 376 U.S. at 589, 84 S.Ct. 841, 11 L.Ed.2d 921 ("There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."). A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003) ("Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefit[t]ed the defense.").

*Burton v. Renico*, 391 F.3d at 772.

As noted by the state appellate court, defense counsel waited until the first day of trial, immediately prior to beginning *voir dire*, to request a continuance, indicating only that Petitioner had "just informed" him that he "may have some witnesses." *Transcript* (ECF No. 9-1, PageID# 256-57). In denying Petitioner's request, the trial court noted that the indictment had been served on Petitioner and that Petitioner had been arraigned on the indictment two months prior to the trial date. Moreover, the state trial court noted that a pre-trial hearing had been held one

month prior to trial, and another several days before trial, and that "discussions about discovery and witnesses on behalf of the defense were discussed at the final pre-trial and the reciprocal discovery was filed by the defendant indicating that perhaps the defendant may be testifying." *Id.* (PageID# 257).

> [The Trial Court]: So. . . without any prior notice, the motion to continue for some witnesses is. . . is [sic] there any specific witnesses? There's no notice of alibi that's been filed. There's no indication there's any affirmative defense. There's no statement against the interest in this case. Is that correct?
>
> [The Prosecutor]: That's correct.
>
> ***
>
> [The Trial Court]: There's ample opportunity for the defendant to have disclosed any potential witnesses. So we'll proceed on with the trial. I'll overrule the motion.

*Id.* Further, Petitioner has not even suggested that any potential defense witnesses would have assisted the defense. Under these circumstances, Petitioner has failed to establish that the trial court acted unconstitutionally, or that he was denied the right to present a defense, by virtue of the trial court's denial of his last-minute request for a continuance.

Claim two is without merit.

## Claim Four

In claim four, Petitioner alleges that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that he was convicted in violation of the Confrontation Clause when Officer Heinz testified regarding statements purportedly made by the 9-1-1 dispatcher and by Bobbi Munyan, a non-testifying co-defendant. The state appellate court rejected this claim, reasoning in relevant part as follows:

> [A]ppellant claims his appellate counsel was ineffective for failing to raise an argument regarding the trial court's decision to admit

18

alleged hearsay statements through the testimony of Officer Jeff Heinz.  Appellant also argues his appellate counsel was ineffective for failing to raise an argument that a portion of Officer Heinz's testimony violated his constitutional rights under the Confrontation Clause.

However, even if we were to find some merit to these claims, based on the overwhelming evidence presented at trial to support his convictions, appellant simply cannot establish that he suffered any resulting prejudice from his appellate counsel's alleged deficiencies.  Therefore, as the exclusion of this evidence would not have changed the outcome of the case, and amounts to, at worst, harmless error, appellant has not met his burden demonstrating a genuine issue as to whether he was denied the effective assistance of appellate counsel. . . .

[A]ppellant's application for reopening is hereby DENIED.

*Entry Denying Application to Reopen Appeal* (ECF No. 7-1 PageID# 219-21).

Petitioner specifically complains about the testimony of Officer Heinz, in regard to the WalMart incident:

The Police Department received a complaint regarding subjects attempting to make a large purchase on a credit card.  The credit card that was attempting to be used the name did not match, as best the management was able to tell, none of the subjects that was there.

*Transcript* (ECF No. 9-1, PageID# 332). Petitioner also complains about Officer Heinz's testimony that, although Petitioner initially provided a false name, Bobbi Munyan provided Petitioner's correct name to Officer Heinz.  *See id.* (ECF No. 9-1, PageID# 335-36).  Finally, Petitioner complains that Officer Heinz should not have been permitted to testify to the hearsay statements by employees or personnel at Murphy USA.  *See id* (ECF No. 9-1, PageID# 339-40).[1]

---

[1] Officer Heinz testified that he was able to determine that there had been an illegal credit card transaction at Murphy USA for cartons of cigarettes using Jane Dill's blue Fifth Third credit card.  *Id.* (ECF No. 9-1, PageID# 340).  Officer Heinz also testified that the transaction at WalMart utilized the same credit card.  *Id.* (ECF No. 9-1 PageID# 341).

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. In order to establish the second prong of the *Strickland* test, *i.e.,* prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of the *Strickland* test in order to establish a claim of ineffective assistance of counsel, should the court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The *Strickland* test also applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781-82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the

hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  The United States Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

> 1. Were the omitted issues "significant and obvious?"
> 2. Was there arguably contrary authority on the omitted issues?
> 3. Were the omitted issues clearly stronger than those presented?
> 4. Were the omitted issues objected to at trial?
> 5. Were the trial court's rulings subject to deference on appeal?
> 6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> 7. What was appellate counsel's level of experience and expertise?
> 8. Did the Petitioner and appellate counsel meet and go over possible issues?
> 9. Is there evidence that counsel reviewed all the facts?
> 10. Were the omitted issues dealt with in other assignments of error?
> 11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970).  The testimonial statement of a witness who does not appear at trial is inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity to cross examine the witness. *Crawford v. Washington*, 541 U.S. 36 (2004). However, "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law[, including] an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Id.* at 68.

The United States Supreme Court has indicated that, at a minimum, "testimonial statements" include "prior testimony at a preliminary hearing, before a grand jury, or at a former

trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id*. On the other hand, a casual remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements that fall within the ambit of the Sixth Amendment. *Id*. at 51–55.

In order to determine whether a proffered statement is testimonial, a court "must decide whether [the statement] has 'a primary purpose of creating an out-of-court substitute for trial testimony.'" *Bullcoming v. New Mexico*, 564 U.S. 647, 669 (Sotomayor, J. concurring) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). Under this "primary purpose" test, statements "are testimonial when the circumstances objectively indicate" that their primary purpose "is to establish or prove past events potentially relevant to later criminal prosecution." *Ohio v. Clark*, — U.S.—, —, 135 S.Ct. 2173, 2179-80 (2015)(citing *Harmon v. Indiana*, 547 U.S. 813, 822 (2006). In making this determination, a court must consider all relevant circumstances. *Id.* at 2180. In the Sixth Circuit, the test for determining whether a statement is deemed testimonial within the meaning of *Crawford* is

> . . . whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

*United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

In any event, Confrontation Clause violations are subject to harmless-error analysis. *McCarley v. Kelly*, 801 F.3d 652, 665 (6th Cir. 2015)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). This Court concludes that Petitioner has failed to establish the denial of the effective assistance of appellate counsel based on the failure to raise a claim under the

Confrontation Clause.   As the state appellate court reasoned, the testimony about which Petitioner complains was cumulative of other substantial evidence of Petitioner's guilt and did not prejudice his defense.   Any failure or default on the part of his appellate counsel in this regard, was therefore harmless. Under these circumstances, Petitioner has failed to establish the denial of the effective assistance of counsel on this basis. *See Strickland*, 466 U.S. at 687.  The state appellate court's decision rejecting this claim was not so unreasonable as to warrant federal habeas corpus relief.  *See* 28 U.S.C. § 2254(d), (e).

Claim four is without merit.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report*

*and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


   *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
March 8, 2017